Filed 4/20/22  In re L.T. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re L.T. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B314379 (Super. Ct. No. 19JD-00187) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JENNIFER T., <br><br> Defendant and Appellant. | |

Jennifer T. (Mother) appeals an order of the juvenile court declaring that her three minor children are adoptable and terminating her parental rights.  (Welf. & Inst. Code, § 366.26,

subd. (c)(1).)[1]  We conclude that the court properly considered and applied the holding of *In re Caden C.* (2021) 11 Cal.5th 614, 636 (*Caden C.*) and affirm.

*FACTUAL AND PROCEDURAL HISTORY*

Mother and G.T. (Father) are parents to three minor children, L.T., E.T., and N.T.  The children ranged between two years old and seven years old at the time they were detained by the San Luis Obispo County Department of Social Services (DSS).  E.T. was then three years old.

On May 2, 2019, DSS received a referral that Father was using methamphetamine and behaving strangely.  DSS contacted Mother and Father who denied using illegal drugs.  Later that day, Mother admitted that she and Father had been using methamphetamine and marijuana.  Father also admitted the same.  Mother informed the DSS social worker that she was overwhelmed caring for seven-year-old L.T., a special needs child who suffers from significant developmental delays.  L.T. could not state her name, her age, or follow simple instructions.  The family had been the subject of frequent DSS referrals over five years.

On May 15, 2019, the juvenile court detained the children and gave discretion to DSS regarding visitation.  DSS later recommended that the court find a detriment to the parents' visitation with L.T.  The parents submitted to the DSS recommendation.

In the DSS jurisdiction and disposition report, the DSS social worker noted that Mother had a long history of substance abuse and appeared to suffer increasing mental health

---

[1] All statutory references are to the Welfare and Institutions Code.

symptoms. Father also had mental health symptoms and had been hospitalized for mental health treatment. DSS recommended family reunification services including mental health treatment, substance abuse counseling, and parent education. On June 20, 2019, the juvenile court held an uncontested jurisdiction hearing, sustained the findings of the jurisdiction petition, and ordered visitation with E.T. and N.T. (§ 300, subd. (b)(1).) The court also required the parents to participate in reunification services.

DSS filed an interim report on September 16, 2019, reflecting that E.T. and N.T. were placed together in a foster home and L.T. was placed separately. Mother visited N.T. and E.T. consistently. Although Father was not participating in his reunification services plan, Mother was participating in substance abuse and mental health treatment. The juvenile court continued the six-month review hearing and granted Mother additional reunification services. The court terminated visitation with N.T., however, finding that the visits were detrimental to her.

DSS filed a status review report on November 26, 2019, stating that Mother was participating minimally in her reunification services plan. Mother also admitted to continuing contact with Father. DSS stated that Mother's visits were concerning because she seemed irritated and less engaged in disciplining E.T. Mother's responses (smiling or laughing) to E.T.'s tantrums were inappropriate.

On January 31, 2020, the juvenile court held a six-month review hearing. Mother and the DSS social worker testified. Mother stated that the supervising visitation aide precluded her from acting as a parent. The DSS social worker testified that the

3

children's behavior deteriorated after visits with Mother.  The juvenile court extended reunification services an additional three months.

DSS filed an interim review report on April 6, 2020.  The report noted that Mother's engagement in reunification services had increased.  Following visits with Mother, however, E.T.'s behavior became infantile.  The report also noted that E.T. and N.T. had bonded with their foster mother.  The parents submitted on the review report and the juvenile court set a 12-month hearing.

On September 22, 2020, and February 8, 2021, the juvenile court held a contested 12-month review hearing.  Mother and the DSS social worker, among other witnesses, testified.  At the conclusion of the hearing, the court determined that reasonable services had been provided to Mother and that there was no substantial probability that the children could be returned to her within six months.  The court commended Mother for her progress in services but that progress was insufficient to return her children.  The court terminated reunification services and set the matter for a permanent plan hearing.

*Section 388 Petition and Section 366.26 Hearing*

On May 13, 2021, Mother filed a section 388 modification petition requesting the return of the three children and an additional six months of reunification services.  Mother supported her petition with evidence that she had successfully completed substance abuse and mental health treatment services.  The juvenile court set a hearing date for the modification petition on the date of the section 366.26 hearing.

On June 1, 2021, DSS filed a section 366.26 report noting that E.T. and N.T. had been in foster care for two years.  Mother

4

continued to visit E.T. following termination of reunification services; E.T. was excited to visit with Mother but transitioned easily at the end of the visit. E.T. also referred to her foster mother as her mother. DSS was seeking a highly structured adoptive placement for E.T. and N.T.[2]

At the combined sections 388 and 366.26 hearing, Mother testified regarding her employment, progress in reunification services, and her willingness to continue participation to become a better parent. Mother recognized that her children had experienced trauma and had special needs, such as autism and reactive attachment disorder. A social worker testified that Mother was unsure in responding to E.T. during visits and the techniques she had learned were not always successful with E.T. At times, E.T. became stressed before and after visits with Mother and her behavior would regress.

At the conclusion of the section 366.26 hearing, Mother's counsel briefly argued that the juvenile court should apply the beneficial parental relationship exception to adoption, but asserted no factual basis to support her argument ("She has been visiting with [E.T.] consistently . . . . So she has a bond that will be broken . . . ."). The juvenile court judge rejected application of the exception and ruled: "With respect to [section] 366.26, I find by clear and convincing evidence that these minors are adoptable within a reasonable time period[;] therefore I'll terminate parental rights. I'll specifically find there are no exceptions for the termination of parental rights under [section] 366.26(c)." The court also denied Mother's section 388 petition, stating that it was unlikely that Mother would acquire satisfactory parental

---

[2] L.T. was placed with her paternal grandmother who was committed to adopting her.

skills if further services were provided.  The court noted that a "[t]remendous amount of services and support for all members of the family have been provided since the initial detention . . . 27 months ago."

Mother appeals and contends that the juvenile court erred by not applying the beneficial parental relationship exception to the adoption of E.T.  (§ 366.26, subd. (c)(1)(B)(i).)  She asserts that the court did not state reasons for not applying the exception.

Mother does not challenge the juvenile court's orders regarding L.T. and N.T., pointing out that those children have special needs and the court had restricted parental contact with them.

Father is not a party to this appeal.

*DISCUSSION*

Mother asserts that the juvenile court did not disclose its reasons for denying the beneficial parental relationship exception.  She contends the court may have relied upon improper legal considerations, citing *Caden C.*, *supra*, 11 Cal.5th 614, 629.

Section 366.26, subdivision (c)(1)(B) requires the juvenile court to terminate parental rights if it finds by clear and convincing evidence that a child is likely to be adopted, unless the court finds a compelling reason for determining that termination would be detrimental to the child due to an enumerated statutory exception.  (*Caden C.*, *supra*, 11 Cal.5th 614, 629.)  The beneficial parental relationship exception of section 366.26, subdivision (c)(1)(B)(i) requires a showing by a preponderance of the evidence that the parent has regularly visited the child, that the child would benefit from continuing the relationship, and that

terminating the relationship would be detrimental to the child. "[T]he exception applies in situations where a child cannot be in a parent's custody but where severing the child's relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child." (*Caden C.*, at p. 630.)

Application of the beneficial parental relationship exception rests upon a variety of factual determinations and is properly reviewed for substantial evidence. (*Caden C.*, *supra*, 11 Cal.5th 614, 630.) The "ultimate decision" that termination would be harmful, however, is reviewed for an abuse of discretion. (*Ibid.*) The parent bears the burden of establishing three elements of the exception: 1) regular visitation and contact; 2) a relationship, the continuation of which would benefit the child; and 3) termination of parental rights would be detrimental to the child. (*Id.* at pp. 631, 636-637.) Ultimately, the juvenile court must decide "whether the harm from severing the child's relationship with the parent outweighs the benefit to the child of placement in a new adoptive home." (*Id.* at p. 632.) What the court must determine, therefore, "is how the child would be affected by losing the parental relationship – in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Id.* at p. 633.)

Mother did not meet her evidentiary burden to establish that her relationship with E.T. was sufficiently compelling to outweigh the legal preference for adoption. At the section 366.26 hearing, Mother offered no factual basis to assert the beneficial parental relationship exception pursuant to *Caden C.* or *pre-*

7

*Caden C.* decisions.[3]  Mother's visits with E.T. reflected that Mother struggled at times to emotionally relate to E.T.  E.T. referred to her foster mother as "Mom," and sometimes ignored Mother during visits.  E.T. also demonstrated regression after visits with Mother and separated easily.  At the time of the section 366.26 hearing, five-and-one-half-year-old E.T. had been in foster care approximately 27 months, a significant portion of her young life.  The " 'exceptional circumstances' " that would allow the juvenile court to circumvent adoption were not present here.  (*Caden C.*, *supra*, 11 Cal.5th 614, 631.)  The court did not abuse its discretion by denying application of the exception.

The juvenile court also did not rely upon inappropriate factors in declining to apply the beneficial parental relationship exception.  The court commended Mother on her progress with drug treatment, mental health treatment, and full-time employment.  But this was not enough.  The court rejected Mother's contention that the court compared her parental skills to those of the foster home or a future adoptive home.  The decisions upon which Mother relies are therefore distinguishable.  (*In re B.D.* (2021) 66 Cal.App.5th 1218, 1226 [parent's failure to complete reunification services plan does not preclude application of beneficial parental relationship exception]; *In re D.M.* (2021) 71 Cal.App.5th 261, 270-271 [juvenile court improperly focused on factors other than emotional attachment between parent and child].)

---

[3] Our Supreme Court filed *Caden C.*, *supra*, 11 Cal.5th 614, approximately five weeks prior to the section 366.26 hearing here.

8

The parental termination order is affirmed.

NOT TO BE PUBLISHED.


                                        GILBERT, P.J.

We concur:



        YEGAN, J.



        PERREN, J.

9

Charles S. Crandall, Roger T. Picquet[*], Judges

Superior Court County of San Luis Obispo

_____

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rita L. Neal, County Counsel, Jenna Morton, Chief Deputy, for Plaintiff and Respondent.

---

[*](Retired Judge of the San Luis Obispo Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)